IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BETH-EL ALL NATION CHURCH, ) | | |
| Illinois not-for-profit corporation, BISHOP ) | | |
| EDGAR JACKSON, agent-pastor, Church, ) | | |
| ) | | |
| PLAINTIFFS, ) | | |
| ) | | |
| vs. ) | No. 06 C 1111 | |
| ) | | |
| THE CITY OF CHICAGO, et al., ) | Judge Der-Yeghiayan | |
| ) | | |
| DEFENDANTS. ) | Magistrate Judge Mason | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN
OPPOSITION TO EXTENSION OF TEMPORARY RESTRAINING ORDER
AND IN RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs have sued in federal court to attack the final judgment of an Illinois state court which has been thoroughly litigated and affirmed on appeal. (They have even sued the state court judge himself to boot.) Thus plaintiffs' claim is squarely barred by the *Rooker-Feldman* doctrine. Consequently, this Court lacks jurisdiction. Moreover, Plaintiffs' instant suit is also barred by *res judicata*, the Tax Injunction Act, and comity. These multiple bars to their suit in turn mean that plaintiffs have absolutely no likelihood of success on the merits. This is dispositive for purposes of the temporary restraining order and preliminary injunction analysis. Even if the Court were to proceed to consider the other prongs of the analysis, however, plaintiffs fail on these as well.

**FACTS**

The subject property is commonly known as 1534 W. 63rd Street in Chicago, Illinois. On August 7, 1997, Cook County purchased the subject property, pursuant to its authority under

Section 21-90 of the Property Tax Code, 35 ILCS 200/21-90, because of delinquent taxes. The County then assigned the certificate of purchase to the City. On June 15, 1998, a tax deed prove-up hearing was held, and on July 9, 1998, Judge Raymond Jagielski entered an order directing issuance of a tax deed to the City. A copy of order for the tax deed is attached as Exhibit A.[1] The County Clerk of Cook County issued a tax deed bearing the same date as Judge Jagielski's order. The deed was recorded as Doc. No. 99305113 on March 30, 1999. In the July 9, 1998 order, Judge Jagielski retained jurisdiction for purposes of entering any subsequent order that might be required placing the City in possession of the subject property. *See* Exhibit A.

After unsuccessfully attempting to take possession of the property from the occupants, Bishop Edgar Jackson and the Beth-El All Nations Church, for a period of several years, the City filed an Application for an Order of Possession for the subject property in the Circuit Court of Cook County. On June 19, 2003, the church filed an "emergency" § 2-1401 petition challenging the tax deeds on notice grounds and seeking to stay all proceedings on the application for possession. On October 14, 2003, the Church filed an Amended § 2-1401 petition. A copy of the Amended § 2-1401 petition is attached as Exhibit B. The City moved to dismiss the church's § 2-1401 petition.

On January 29, 2004, Judge Jagielski heard arguments on the motions. A copy of the transcript is attached as Exhibit C. The City's motion to dismiss was granted. A copy of the January 29, 2004 Order is attached as Exhibit D. On February 3, 2004, the church filed an emergency motion to reconsider, and the court denied the motion. The church requested, and the

---

[1] This Court can, and is hereby asked to, take judicial notice of state court orders and court documents. Fed. R. Evid. 201. *See Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1064 (N.D. Ill. 2004), and cases cited therein.

court granted, a 30 day stay of judgment, and thus the City could not possess the subject property at that time.

On February 4, 2002, the church filed a Notice of Appeal to the Illinois Appellate Court. On February 25, 2004, the appellate court entered a stay order, leaving the church in possession of the subject property but allowing the City to evaluate it to ensure that it stayed in safe condition pending the outcome of the appeal. The parties briefed the issues, with the Appellants arguing, *inter alia*  A copy of Appellant's Briefs is attached as Group Exhibit E. After briefing, on March 31, 2005, the Illinois Appellate Court affirmed the trial court's ruling dismissing the church's § 2-1401 petition. A copy of the March 31, 2005 Order is attached as Exhibit F. On April 21, 2005, the church filed a petition for rehearing in the appellate court (a copy of the Petition for Rehearing is attached as Exhibit G), which was denied on May 6, 2005. A copy of the May 6, 2005 Order is attached as Exhibit H.

On June 24, 2005, the church filed a motion for leave to file its petition for leave to appeal to the Illinois Supreme Court. On July 6, 2005, the Illinois Supreme Court granted the motion, and on September 29, 2005, the church petitioned for leave to appeal. On October 21, 2005, the Supreme Court denied the church's petition. A copy of the denial is attached as Exhibit I. The Supreme Court ordered the mandate to issue on October 21, 2005. *Id.*

After the mandate returned to the Circuit Court, Judge Jagielski entered an order of possession to the City, but stayed it until February 28, 2006. *See* Exhibit J.[2] Upon the expiry of that stay, plaintiffs filed the instant suit attacking the result of the Circuit Court litigation.

---

[2]The City permitted the Plaintiffs to retain possession of the Subject Property until March 1, 2006.

**ARGUMENT**

The standard for considering a motion for a temporary restraining order or a preliminary injunction is the same. *Kaczmari v. Wheaton Community Unit Sch. Dist. # 200*, 2004 WL 1093348, *3 (N.D. Ill. May 4, 2004). Under this standard, a court will consider whether the party bringing the motion has shown that: 1) it has a reasonable likelihood of success on the merits of its claim; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if preliminary relief is denied. *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996). *If* the movant is able to establish these three requirements, a court will *then* consider: 4) if the irreparable harm the moving party will suffer without preliminary injunctive relief outweighs the irreparable harm the non-moving party will suffer if the preliminary injunction is granted; and 5) whether the preliminary injunction will harm the public interest. *Id.* "If it is plain that the party seeking the injunction has no case on the merits, the injunction should be refused regardless of the balance of harms." *Wisconsin Music Network v. Muzak Ltd. Partnership*, 5 F.3d 218, 221 (7th Cir. 1993). Here, plaintiffs cannot meet any of the requirements for preliminary relief.

**A.  Plaintiffs Have No Likelihood of Success on the Merits Because This Court Lacks Jurisdiction.**

**1.  The case is barred by the *Rooker Feldman* doctrine.**

As is outlined in the City's Motion to Vacate (Docket # 10), this Court does not have jurisdiction to adjudicate this matter, and therefore, Plaintiffs have no likelihood of success on the merits. Because the state court has already rendered a judgment against Plaintiffs, at both the circuit court and the appellate court level, Plaintiffs claim is barred in federal court by the *Rooker-Feldman* doctrine. This doctrine is jurisdictional, and it is beyond dispute that this Court

is obligated to consider its own jurisdiction. *See, e.g., Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S. Ct. 1563 (1999); *Wernsing . Thompson*, 423 F.3d 732, 743 (7th Cir. 2005).

Under the *Rooker-Feldman* doctrine, neither federal district nor appellate courts have jurisdiction over claims that would amount to a review of a state court judgment. *Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001). The Supreme Court recently made clear that this doctrine is meant to address "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, ___, 125 S. Ct. 1517, 1522 (2005).

The *Rooker-Feldman* doctrine applies when a party is seeking to have the federal court review a state court judgment because 1) the party is asking to have the state-court decision overturned; or 2) is seeking relief that is "inextricably intertwined" with state court judgments that it would necessarily require the federal court to review the state court's decision." *4901 Corp. v. Cicero*, 220 F.3d 522, 526 (7th Cir. 2000). In deciding if the doctrine applies, a court examines whether the injury alleged in the federal case is distinct from the state court judgment. *Garry v. Geils*, 82 F.3d 1362 (7th Cir. 1996).

For example, in *Holt v. Lake County Board of Commissioners*, 408 F.3d 335 (7th Cir. 2005), the Seventh Circuit held that a taxpayer's § 1983 challenge to the validity of a county's tax sale of his property was barred by the *Rooker-Feldman* doctrine, because the plaintiff had previously challenged the sale in state court. *Id*. at 336. The court noted that it had "repeatedly stated that 'a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights

action." *Id.,* quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548 556 (7th Cir. 1999).

*Murray v. Cook County Treasurer*, 2004 WL 1638229 (N.D. Ill. July 22, 2004) is also instructive on this point. In *Murray,* the plaintiff brought a claim alleging that his constitutional rights had been violated when a state court judge entered an order for a tax deed. *Id.* at *1, 2. The district court held that, under the *Rooker- Feldman* doctrine, it did not have jurisdiction to hear the matter because the plaintiff was essentially asking the court to review the state court judgment. *Id.* at *4. The court found that the plaintiff's "self serving declaration" that his constitutional claims were separate from the state court judgment was not enough to give the court jurisdiction. Accordingly, the court dismissed the case for lack of subject matter jurisdiction.

Here, Plaintiffs' claims allege injury arising from Cook County Circuit Court Judge Jagielski's June 15, 1998 order assigning the tax deed for the Subject Property to the City of Chicago. There is no way that Plaintiffs can undo the clear connection between the state court judgment and the instant case. In the case below, Plaintiffs complained in their § 2-1401 petition that they did not receive proper notice. *See* Exhibits B, C. The state court rejected this claim as untimely and gave possession of the Subject Property to the City. *See* Exhibit D. Now calling them constitutional claims, Plaintiffs have brought their same allegations regarding notice to this Court. *See* Motion for Preliminary Injunction. Simply dressing the notice issue up as federal constitutional claims does not take away the fact that the federal claims are one in the same with issues already aired, and decided, at the state court level.

Because Plaintiffs are asking this Court to revisit the state court judgment**,** this Court does not have jurisdiction to hear their claims, pursuant to the *Rooker-Feldman* doctrine. Without

jurisdiction, this Court can hardly enter judgment in Plaintiffs' favor, and therefore Plaintiffs have no likelihood of success on the merits.

### 2. The case is barred by *res judicata*.

In addition, this case is barred by because the issues have been previously litigated in another forum, thereby triggering the application of *res judicata* or "claim preclusion." *Res judicata* prevents a party from re-litigating claims that it has previously aired in an earlier suit. *See e.g. Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995); *Davis v. City of Chicago*, 53 F.3d 801 (7th Cir. 1995). Where the first case is in state court and the second is brought in federal, claim preclusion implicates the Full Faith and Credit Statute, 28 U.S.C. § 1738. *Rogers*, 58 F.3d at 301; *Harris Trust & Savings Bank v. Ellis*, 810 F.2d 700, 704-06 (7th Cir. 1987). Therefore, a federal court looks to the laws of the state that entered the prior judgment in order to determine whether to give preclusive effect to the state court judgment. *Garry v. Geils*, 82 F.3d 1362, 1367 n. 8 (7th Cir. 1996). In Illinois, a final judgment on the merits bars the same parties or their privies from relitigating issues that were raised, or could have been raised, in the earlier action. *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987); *American Nat'l Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1552-53 (7th Cir. 1987); *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 302 (1998); *Furgatch v. Butler*, 188 Ill. App.3d 1060, 1065 (1st Dist. 1988).

Here, all three prongs of the test have been met. First of all, the state court issued a final judgment in 1998, which Plaintiffs unsuccessfully tried to vacate several years later. Second, the parties, namely Beth-El All Nations Church and its pastor, Edgar Jackson*,* were the litigants in the state court litigation.

Finally, with respect to identity of causes of action, Illinois applies the "transactional"

test, under which a court will consider separate claims to be the same cause of action if they arose from the same set of operative facts, regardless of whether differing legal theories are raised. *River Park*, 184 Ill.2d at 309-11.

Here, Plaintiffs' federal suit arises out of the same group of operative facts as the prior state court litigation. Plaintiffs are claiming that they, not the City, are entitled to legal possession of the Subject Property. The issues that Plaintiffs raise in their Complaint, such as notice, were either expressly or implicitly litigated at the state court level. The federal constitutional claims, such as Fourth Amendment unlawful seizure and Fourteenth Amendment equal protection, could have been brought in state court. *Res judicata* applies, even if Plaintiffs did not bring those claims.

### 3. The Case is Barred by the Tax Injunction Act and Comity.

In addition, plaintiffs have run afoul of the Tax Injunction Act, 28 U.S.C. § 1341. The Act "withdraws from the federal courts jurisdiction to 'enjoin, suspend or restrain the assessment, levy or collection of state taxes (including local taxes) . . .unless the taxpayer lacks an adequate state remedy." *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001). Moreover, not only is the Tax Injunction Act based on principles of comity (so as to "prevent[] taxpayers to run to federal court to stymie the collection of state taxes," *id.*), but principles of comity in and of themselves preclude efforts to seek damages based on local tax collection efforts. *Id.* citing *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107, 102 S. Ct. 177 (1981). For these reasons as well, jurisdiction is lacking for this Court to entertain Plaintiff's attack on the Illinois courts' rulings awarding possession of the West 63rd Street property to the City.

### B. Plaintiffs Have an Adequate Remedy at Law Because They Seek Damages.

Plaintiffs have an adequate remedy at law, which they admit in their pleadings by asking for compensatory damages "in the amount of $500,000 against each Defendant." Complaint at Law, p. 57. By seeking this relief, Plaintiffs have conceded that their injury is compensable monetary damages, and thus they have not met the second prong of the preliminary injunction standard.

### C. Plaintiffs Will Not Suffer Irreparable Harm Because the Property Is Not Unique.

Plaintiffs have not established that they will suffer irreparable harm because they have not alleged, nor can they allege, that the Subject Property is uniquely suited to their purposes. While it is true that land may be considered unique for purposes of establishing irreparable harm, it is by no means a foregone conclusion that all land is unique. *McKenzie v. City of Chicago*, 118 F.3d 552, 556 (7th Cir. 1997). In other words, without a special showing of uniqueness, "money is the perfect substitute for property." *Id.*

In the instant case, Plaintiffs have not made any showing that the Subject Property is uniquely required to run their alleged enterprises. While Plaintiffs claim that they perform charitable and religious services, they have not shown why it is necessary that they perform these functions at this particular piece of property. Therefore, they will not suffer irreparable harm, and they have not met the third prong of the preliminary injunction standard.

### D. If There Is Irreparable Harm, That Harm Will Be As Great or Greater for the City If the Injunction Is Granted.

If, as Plaintiffs claim, they will suffer irreparable harm, the City would suffer the exact same harm if the injunction is granted. If in fact the building is unique, it will be equally

detrimental to the City to lose this building, which it now has a legal right to possess. Moreover, because, as a matter of state law, the City owns the property, it has potential tort liability exposure incident to that property. To the extent that a preliminary injunction would leave the City with continuing liability exposure yet no possessory rights, it would be in a worse position than the plaintiffs would be without such an order.

### E. The Preliminary Injunction Would Harm the Public.

Finally, if the preliminary injunction is granted, there would be significant harm to the public. As an initial matter, the underlying reason that the Circuit Court deeded this property to the County (which then transferred the right to possession to the City), was because the Plaintiffs had not paid their County taxes for over ten years. *See* Exhibit D. The property was transferred to the County, per operation of state law, in lieu of the unpaid taxes. The County, in turn, transferred what was by then its property to the City. If the City is not allowed to take possession of the property, then the County's collection of the unpaid taxes will have been thwarted.

Furthermore, if the Subject Property is left in the possession of the Plaintiffs, there would be numerous harms to the surrounding neighbors. For example, the property is located at a significant intersection, and the City has been unable to develop the property in a way that would bring revitalization to the neighborhood. By leaving this building in the hands of the Plaintiffs, the Subject Property will remain a blight on the neighborhood, rather than allowing it to become a tool for revitalization in the area.

## CONCLUSION

Plaintiffs have no likelihood of success on the merits. Their instant case, which seeks to overturn a competent final decision by the Illinois courts, fails for want of jurisdiction, as well as

being barred for other dispositive reasons. Moreover, even were the Court to proceed to the other prongs of the temporary restraining order/preliminary injunction analysis, plaintiffs could not prevail. Accordingly, the March 1, 2006 temporary restraining order should not be extended, and plaintiffs' motion for preliminary injunction should be denied.

**DATED:** **March 10, 2006**

                                              Respectfully submitted,

                                              MARA S. GEORGES
                                              Corporation Counsel of the City of Chicago


                              BY:     /S/ Andrew S. Mine_____
                                              One of the Attorneys for Defendant


ANDREW S. MINE
Senior Counsel
CAROLINE K. SHEERIN
Assistant Corporation Counsel
Constitutional and Commercial Litigation Division
City of Chicago Law Department
30 N. LaSalle Street Suite 900
Chicago, IL 60602
(312) 744-7220/742-0260