IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BETH-EL ALL NATIONS CHURCH, | ) | |
| BEYTHEL OUTCAST CHURCH, | ) | |
| and BISHOP EDGAR JACKSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 06 C 1111 |
| | ) | |
| THE CITY OF CHICAGO, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs Beth-El All Nations Church's,

Beythel Outcast Church's, and Bishop Edgar Jackson's (collectively referred to as

"Church") motion for a preliminary injunction. For the reasons stated below, we

grant the motion for a preliminary injunction.

## BACKGROUND

Plaintiffs claim that Beth-El All Nations Church is a place of worship and is

an organization that performs good works throughout its community and offers

1

valuable assistance to the poor and troubled persons in the community. The Church contends that the Defendant City of Chicago ("City") has unjustifiably obtained title to the Church property due to unpaid taxes that were not actually owed. The Church has come before this court pleading for the court to preserve the status quo during the pendency of these proceedings. The Church claims that such relief is necessary to prevent the City from making a rash attempt to evict the Church Bishop and the parishioners from the Church in which they have worshiped for the last several decades.

The Church alleges that it purchased the property located at 1534 West 63rd Street in Chicago, Illinois in 1976 and thereafter rehabilitated the property. In 1984 the Church began operating on the property. The Church states that it is located in a poor community that is plagued with violent crimes and that a variety of activities occur at the Church, which include: 1) weekly religious worship, 2) preaching on religious, moral, and political issues, 3) pastoral counseling for young men involved in gangs and illegal drugs, 4) pastoral counseling for the disturbed, lonely, and bereaved, 5) daily prayer meetings, 6) singing and musical performances, 7) baptisms, confirmations, weddings, funerals, 8) Bible studies, 9) games and sport activities, 10) church dinners, 11) service projects for the poor, homeless and elderly, and 12) evangelistic lectures.

The Church contends that the area surrounding the Church was targeted for redevelopment and that "[a]t some point in or before January 1998 the [City of Chicago] came to desire to own" the Church property. (A. Compl. Par. 12). According to the Plaintiffs, the Church was a tax exempt entity and did not owe real estate taxes. The City has agreed that the Church was a tax exempt entity, but the City has alleged that the church owed taxes because the Church had conducted some sort of resale activities on the Church property and that the Church did not have tax exemption for such resale activity. The Church has denied the City's allegations and has stated that the Church merely conducts fund-raising activities on the Church property. The City has not specified what resale activities occurred at the Church or whether they consisted of nothing more than, for example, the selling of baked goods by parishioners.

According to the Church, the City never informed the Church representatives of the Church's obligation to pay real estate taxes and in 1998, the City brought an action in state court to obtain a tax deed for the Church property due to unpaid real estate taxes. The City admits that the notice of the tax deed hearing had the wrong address and that the Church never received prior notice of the tax deed proceedings. In fact, a summons document by the Sheriff's Office indicates that the tax deed hearing notice was not served on the Church because the address on the notice did

not exist.  We also note that the incorrect address appears on several documents prepared by the City or its attorneys such as the affidavit attached to the application for the tax deed and the title search company's report.  The state court entered a tax deed for the City in a hearing in which the Church was not represented due to the improper notification by the City.  The Church contends that after the hearing, despite the fact that its representative was not present at the tax deed hearing, the City never bothered to properly advise the Church of the tax deed or give proper notice of the running of the redemption period.  The Church claims that in April 2003, they first learned about the tax deed case and that the Church immediately demanded that the City return the title to the Church property.  In June 2003, the Church filed a petition seeking to collaterally attack the tax deed and have the tax deed order vacated.  Even though the Church had never been properly notified of the tax deed case prior to the hearing or of the running of the redemption period, the state trial court judge denied the petition because the petition was not filed within the applicable limitations period.  The state appellate court affirmed the trial court's ruling based upon the appellate court's conclusion that the petition was time-barred and the Illinois Supreme court denied the Church's leave to appeal.

The Church also claims that in 2003, when it demanded that the City return the title to the Church property, it was referred by the City to Charles Bowens

("Bowens") who is the City's liaison to African-American churches. According to the Church, Bowens admitted that the tax deed possessed by the City was wrongfully obtained and that Bowens would attempt to have the City return title to the property to the Church. Bowens allegedly told Church representatives that the process would take a long time and asked for the Church to be patient. From April 2003 to September 2005, Bowens and other City officials allegedly gave encouragement to the Church, indicating that the title to the property would be returned to the Church. However, in January 2006, the City told the Church that there was no chance that the title would be returned to the Church.

In January 2006, the City filed a motion seeking an order of possession of the Church property. On January 27, 2006, a state trial court judge granted possession of the property to the City and gave the Church seven days to vacate the property. The Church, having only seven days to avoid eviction, states that it was desperate for more time to determine the proper course of action, and thus signed an agreement with the City stating that the Church would vacate the property by February 28, 2006. On February 28, 2006, the Church and its Bishop brought the instant action seeking damages and injunctive relief for state law and constitutional violations. On March 1, 2006, we entered a temporary restraining order. The Church now seeks a preliminary injunction arguing that the Church not only is a place of worship, but

also performs a vast array of services that are valuable to the community, all of which will be in jeopardy if the City is allowed to evict the Bishop and his parishioners before they are given an opportunity to have their day in court.

**LEGAL STANDARD**

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005)(stating that "[a]s the Supreme Court has observed, "[a] preliminary injunction is an extraordinary and drastic remedy")(quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)). In order to obtain a preliminary injunction, a plaintiff must show that: "(1) [the plaintiff] ha[s] a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) [the plaintiff] will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman*, 430 F.3d at 437.

**DISCUSSION**

I. Reasonable Likelihood of Success on the Merits

To determine whether a plaintiff has a reasonable likelihood of success on the merits, the court must assess whether the plaintiff has "a greater than negligible chance of winning . . . ." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). In addition, the required showing by the plaintiff for the likelihood of success on the merits can be lessened if there is "a greater predominance of the balance of harms." *Id.* The City argues that the Church has no likelihood of success on the merits because of the *Rooker-Feldman* doctrine, res judicata doctrine, the Tax Injunction Act and principles of comity, and the statute of limitations.

## A. *Rooker-Feldman* Doctrine

The City argues that the Church has no likelihood of success on the merits because the instant action is barred by the *Rooker-Feldman* doctrine. The Seventh Circuit has indicated that "[t]he Rooker-Feldman doctrine precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court." *Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001). In other words, the *Rooker-Feldman* doctrine prohibits "federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes such review." *Ritter v. Ross*, 992 F.2d 750, 753

(7th Cir. 1993)).

The *Rooker-Feldman* doctrine generally precludes our review of claims or issues actually raised in state proceedings. *See Centres v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998)(holding that "[a] decision by a state court, no matter how erroneous, is not itself a violation of the Constitution actionable in federal court"). It also typically applies to claims or issues not raised in state proceedings that are nevertheless "inextricably intertwined" with those that were raised. *Ritter*, 992 F.2d at 753.

In the instant action, the City contends that the constitutional and other federal rights issues serving as the basis for the Church's present petition for a preliminary injunction before this court are inextricably intertwined with issues raised or could have been raised during prior state court proceedings. Under the *Rooker-Feldman* doctrine, there is "no bright line that separates a federal claim that is inextricably intertwined with a state court judgment from a claim that is not so intertwined." *Id.* at 754. As Judge Williams of the Seventh Circuit Court of Appeals has so eloquently stated, it is improper to view the *Rooker-Feldman* doctrine as an absolute bar to our jurisdiction over all claims associated with previous state decisions. *See Manley v. City of Chicago*, 236 F.3d 392, (7th Cir. 2001)(stating that "the key inquiry is 'whether the district court is in essence being called upon to review the

state-court decision'")(quoting *Ritter*, 992 F.2d at 754); *see also Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996)(indicating that a federal court must determine "whether the federal plaintiff seeks to set aside a state court judgment or he is, in fact, presenting an independent claim").

The Seventh Circuit recognizes at least two kinds of exceptional instances in which a federal district court may assume jurisdiction over claims that would normally be barred under the *Rooker-Feldman* doctrine. First, if a state judgment is void, as for example when there is political corruption of a state court judgment, the *Rooker-Feldman* doctrine does not apply. *See Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)(stating that a plaintiff may vindicate his right "to be judged by a tribunal uncontaminated by politics"). Second, an issue or a claim is not barred by the *Rooker-Feldman* doctrine "if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings." *Taylor v. Federal National Mortgage Association*, 374 F.3d 529, 534 (7th Cir. 2004). In determining whether a plaintiff has had a reasonable opportunity to raise such issues during state court proceedings, we cannot consider "the actions of the opposing parties," but may assess "state laws, state court procedures or other impediments that [stood] in the [plaintiff's] way." *Id.* at 534-35.

In the instant action, the City is swift to suggest that the Church has

thoroughly and exhaustively pursued appeals of the state court tax deed decision through all levels of appellate review up to the Supreme Court of Illinois. The implication of this argument is that the present claims either were or should have been raised by the Church in the course of those previous proceedings or appeals and that the *Rooker-Feldman* doctrine now bars the claims presented in the Church's First Amended Complaint. We find that the City's arguments are not supported by the record. First, the City concedes that because it mistakenly attempted to serve the notice of the tax deed hearing at the wrong address, the Church lacked prior notice of its 1998 tax deed hearing and did not appear at that hearing. The Church furthermore alleges that it lacked actual notice of that hearing until April 2003, which would account for its failure to contest the tax deed decision until after the statutory appeals deadline had expired. This procedural default effectively winnowed the scope of permissible appellate argumentation to issues related to whether the Church would be permitted to air its grievances at all and to defend its right to possess its own property. Clear precedent from the Seventh Circuit and other courts indicates that if a state court enters a lien against a party without actual notice to that party and the statute of limitations for filing an appeal has subsequently run, the party is deemed to have lacked a reasonable opportunity to appeal that judgment. *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, 599 (7th

Cir. 1992).

In closing arguments before this court, counsel for the City alternatively contends that the Church did, in fact, present arguments about its Fourteenth Amendment right to Due Process during the Church's appeal of the state court tax decision. The implication of this argument is that this court has no jurisdiction over the Count IV Due Process claim in the Church's First Amended Complaint. We first note that the *Rooker-Feldman* doctrine is not a magic words test; the mere mention of a "due process violation" during appellate state court proceedings in which the appellate court applied a severely restrictive filter to the permissible scope of argumentation as a result of the lapsed statute of limitations was not a realistic or reasonable opportunity to raise a Due Process claim under *Rooker-Feldman*. *See Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002) (citing approvingly a child custody case in which appellate review was conducted under a "best interests of the child" standard that "plaintiffs did not have a realistic opportunity to present substantive due process claims"). Moreover, even if it did prove to be the case that a federal district court lacks jurisdiction over the Church's Due Process claim, this lack of jurisdiction does not extend to the Church's other claims and there is a sufficient basis for the Church's likelihood of success on the merits.

Finally, counsel for the City asserts in the alternative that the Church's failure

to raise its constitutional and federal claims during state court proceedings amounts to a waiver of those claims under *Rooker-Feldman*. This contention is inconsistent with Seventh Circuit precedent. *See Ritter*, 992 F.2d at 754 (holding that "a constitutional claim is not 'inextricably intertwined' merely because it could have been raised, but was not, in the earlier state court proceeding").

In the instant action, based upon the record before us, the issues being litigated in this action are not the same issues that were litigated in Illinois state court. The record shows that the state court, in the absence of the Church that was not properly notified, gave the tax deed to the City and did not address any of the issues brought by the Church in this action. At a subsequent collateral hearing, the state trial court once again did not address any of the issues brought by the Church in this action. The state appellate court, addressed tangential issues such as limitations periods requirements and found that the Church could only avoid the statute of limitations bar if the state court's judgment was void. The state appellate court decided that the judgment of the state court was not void because the court had *in rem* jurisdiction over the matter. Therefore, the state appellate court did not meaningfully address any of the issues brought by the Church in this action. The Illinois Supreme court denied the Church leave to appeal and did not address any of the issues brought by the Church in this action. Thus, the issues concerning the

Church's constitutional right's to due process, religious freedom, and free speech were not addressed in any meaningful manner by the state courts. In sum, we find that the Church did not have a reasonable opportunity to raise some or all of its constitutional and federal claims or issues now presented to this court. Accordingly, we find that the *Rooker-Feldman* doctrine does not bar our continued jurisdiction over this case.

## B. Res Judicata

The City also argues that the Church has no likelihood of success on the merits because the instant action is barred by the doctrine of res judicata. Under the doctrine of res judicata, a state court judgment "must be given the same *res judicata* effect in federal court that it would be given in the court of the rendering state." *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987). The scope of the doctrine of res judicata is determined by examining the law of the state that entered the judgment. *Id.* Under Illinois law, the elements of the res judicata doctrine are:

" (1) an identity of parties or their privies in the two suits; (2) an identity of causes of action in the earlier and in the later suit; and (3) a final judgment on the merits in the earlier suit." *Id.* As is explained above in the discussion concerning the *Rooker-Feldman* doctrine, the issues concerning the Church's constitutional

right's to due process, religious freedom, and free speech were not addressed in any meaningful manner by the state courts. Therefore, none of the litigation in the state court proceedings has any preclusive effect in the instant action and the doctrine of res judicata is not applicable.

### C. Tax Injunction Act and Comity

The City also argues that the Church has no likelihood of success on the merits because the Church is barred from bringing the instant action by the Tax Injunction Act, 28 U.S.C. § 1341, and by the principles of comity. The Tax Injunction Act "withdraws from the federal courts jurisdiction to 'enjoin, suspend or restrain the assessment, levy or collection' of state taxes . . . unless the taxpayer lacks an adequate state remedy." *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001). However, in the instant action, the Church is not requesting that this court interfere with the City's tax collection efforts. Rather, the Church is merely asking the court to examine whether the Church's constitutional rights and other rights were violated and whether the Church is entitled to damages or an opportunity to have its claims heard before its property is taken by the City.

In addition, the record shows that the Church lacked an adequate state remedy in the state court system because although the Church never received proper notice

of the tax deed hearing, the Church was barred by the state appellate court from

having its constitutional rights claims heard due to the running of limitations periods.

Thus, in the absence of notice of the tax deed hearing and the running of the

limitations period and the redemption period, the Church never had an opportunity to

have any state court address whether the Church's constitutional rights guaranteed to

the Church and its parishioners by the United States Constitution were violated and

whether such violations warranted precluding the City from obtaining a tax deed and

possession of the Church property.

The City also argues that the court should not hear the instant action under the

principles of comity. However, the Church is not seeking to overturn the rulings

made in the state court. We are merely reviewing whether the Church's

constitutional rights were violated by the City, an issue that was never addressed by

the state court system in any meaningful manner. Thus, since the instant litigation

involves separate and distinct issues and claims from the state court proceedings, the

principle of comity is not applicable.


### D. Statute of Limitations

The City also argues that the Church has no likelihood of success on the

merits because the constitutional claims brought pursuant to 42 U.S.C. § 1983

("Section 1983") are barred by the statute of limitations. The statue of limitations period for Section 1983 claims in Illinois is two years. *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006). In the instant action, although due process claims that were based upon the improper notice of the tax deed hearing in 1998 might be barred by the statute of limitations period, the majority of claims involving the January 2006 order of possession would not be barred by the statute of limitations period. Also, even in regard to the claims relating to the improper notification of the tax deed hearing, based upon the record before us it is not clear whether the equitable tolling doctrines would be applicable and would enable the Church to pursue such claims. For example, there is evidence that the Church was strung along until after the limitations period had expired by the City and by representations made by City representatives that the City would return the title to the Church. We note, for example that in the City's own exhibit 8, an attorney for the City informs the Church in a latter dated March 23, 2000 that "[a]fter a review of the facts regarding the above-mentioned property, the City of Chicago has decided not to seek a tax deed transferring title to the City pursuant to the pending tax sale." (D Ex. 8). There was also testimony concerning Bowen's repeated representations to the Church that indicated that the City was going to return the title to the Church. Thus, the statute of limitations is not an automatic bar to the Church's claims as the City

contends.

E. Other Merits of Church's Case

The Church has provided the court with a copy of the notice sent by the City

for the tax deed hearing and an affidavit from a City official that recognizes that the

summons for the tax deed hearing was attempted to be served at 1534 East 63rd

Street in Chicago, Illinois rather than at 1534 West 63rd Street, where the Church is

located.  The evidence shows that a similar error was made in regard to the

notification of the running of the redemption period.  In addition, evidence has been

presented indicating that the notifications sent by the City were returned as

undeliverable since no such address existed.  One wonders how the City could not

know the address of a church that is located within the City's own municipal limits,

a church that the City is attempting to possess.

The evidence presented by the parties indicates that the Church did not have

notice of the tax deed hearing or the running of the redemption period.  The evidence

also shows that the City, by failing to properly notify the Church, denied the Church

an opportunity to challenge the tax deed in a timely fashion.  The record also clearly

shows that once the limitations period had barred the Church's challenge to the tax

deed, a domino effect took place in the state court system that prevented the state

court system from addressing the merits of the Church's position in any meaningful way. As the evidence now stands before us at this juncture, the City admits to being derelict in its duty to give proper notice to the Church of the tax deed hearing and the redemption period. The City has since sought to keep the allegedly unlawful title to the Church by hiding behind technical arguments concerning the passing of limitations periods and the finality of state court rulings that never addressed the substance of any of the Church's claims. In addition, we found the testimony presented by the Church witness to be extremely persuasive and credible and did not find that the testimony presented by the City was credible. Thus, we conclude that the likelihood of success on the merits factor favors the Church. We also note that, as will be explained below, the impact on the Church would be unduly harmful and, thus, the likelihood of success on the merits burden for the Church is even lower than is generally the case.

## II. Inadequate Remedy At Law

The Church argues that it has no adequate remedy at law because if it loses possession of the church, it will have no place to conduct the activities that are now performed on the Church property. The City argues that the Church has an adequate remedy at law because the Church can recover damages. We disagree. The

evidence shows that the Church performs valuable services for the community in which it resides. Based upon the representations of the Church, which appear to be genuine, the community in which it resides is a poor community that needs the type of help offered by the Church and its parishioners. Were this court to deny the Church's request for a preliminary injunction, the Church activities would cease and losses to the community would result that could not be quantified in dollars and cents. For example, a young man who would no longer be counseled against gang violence might commit a crime in the community. Likewise, the record shows that the parishioners have worshiped at the Church for many years and there is no indication that the parishioners would be able to easily relocate the Church to another location and recommence worship and the services for the community that the church now performs. In fact, it is entirely unclear why the City would desire such an asset to the community to cease its operations and move elsewhere. Thus, the record clearly shows that the Church faces sever harm that could not be compensated by damages and thus the Church has no adequate remedy at law.

III. Irreparable Harm and Balancing of Harms

As is explained above, the Church will likely suffer untold harms if it is forced to vacate the Church property. There is every indication that if the Church is

evicted, the Church and its parishioners will forever be lost to the community and the Church members will be deprived of the place of worship and institution that they have known for several decades. If the City is allowed to evict the Church Bishop and its parishioners during the pendency of these proceedings, and if at the end of these proceedings it is determined that the Church is entitled to possession of the Church property, the finding will have little meaning. By then, untold harm will have been done to the Church and its parishioners. Thus, the Church has shown that it will suffer irreparable harm if the court does not enter a preliminary injunction. *See also Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004)(stating that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, . . . and money damages are therefore inadequate").

The balancing of the harms clearly favors the Church. On the one hand is the City, which obtained the tax deed years ago, and waited for years while it attempted to reach a solution with the Church. The length of these proceedings will be minimal in comparison to the years that the City has waited to decide whether it will seek possession of the church. On the other hand, is the Church that will be unable to perform good works in the community, and the Church parishioners who will be denied the opportunity to worship at the Church. The harm to the Church is thus

much more severe than is the potential harm for the City.


IV. Public Interest

      Although there is a public interest in seeing that taxes are paid, in this case it is not clear whether taxes were ever owed. Even if they were owed, there is a question of whether the Church was given a chance to pay the taxes in a timely fashion. In addition, even if the court enters a preliminary injunction, the Church will have to prevail on the merits of its case or the injunctive relief will be only temporary. On the other hand, there is a strong public interest in ensuring that a thorough review of the facts and evidence in this action occurs before the Church is torn from its parishioners and the needy people of the City who have come to rely on the benevolent institution. The church provides a place of worship to members of the community. It also provides countless other valuable services for the people of the City. All such activities would be in jeopardy if this court failed to enter a preliminary injunction. In addition, one of the basic tenets of our country is freedom to practice of religion. Thus, it is extremely important to ensure that justice is being done before a place of worship is closed down. Thus, we conclude that the public interest factor favors the Church.

      The taking of the property of another is a serious matter. The Church must

have received proper notice of the tax deed sale and the Church has a right to defend itself. The principles of due process and notions of fundamental fairness demand nothing less. It is clear from the record before us that the church was not given a proper opportunity to present its claims in state court. Thus, based on all of the above analysis, we conclude that a preliminary injunction is appropriate in this action and we grant the Church's motion for a preliminary injunction. In this country, even a church is entitled to its day in court. That did not happen in this case.

## CONCLUSION

Based on the foregoing analysis, we grant the Church's motion for a preliminary injunction.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   March 17, 2006